## UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 13 |
| | ) | |
| OTTIS and DEMITRI DUGAR, | ) | Case No. 06 B 11328 |
| | ) | |
| Debtor. | ) | Hon. Jacqueline P. Cox |

### MEMORANDUM OPINION

In this matter, the Debtors, Ottis Dugar ("Ottis") and Demitri ("Demitri") (collectively "Debtors"), object to the claim of Georgia Williams ("Ms. Williams"). After concluding a two-day hearing on the matter, the Debtors' objection to Georgia's claim is sustained.

### I. Jurisdiction

The Court has jurisdiction to entertain this matter pursuant to 28 U.S.C. § 1334 and Internal Operating Procedure 15(a) of the United States District Court for the Northern District of Illinois. This matter is a core proceeding under 28 U.S.C. §§ 157(b)(2)(A),(B) and (O).

### II. Background

The Debtors filed for bankruptcy relief under chapter 13 of the Bankruptcy Code[1] on September 11, 2006. Ms. Williams filed a proof of claim in the bankruptcy case based on a state court action regarding an alleged breach of contract between Ms. Williams and the Debtors relating to home repair work the Debtors were to provide for her. A hearing was held at which both sides presented evidence.

The following background relates to testimony given during the two-day hearing. Four witnesses testified during the hearing. Demitri, Ottis' wife, testified along with Ottis and Keith Kersee, a contractor who did subsequent work on the property after Ottis left the project. These

---

[1] 11 U.S.C. § 101 *et seq.*

witnesses testified on behalf of the Debtors. Only Ms. Williams testified on her behalf.

Ottis is a retired truck driver for the City of Chicago who performs home repair work as a means of earning extra income. Ottis testified that although he is not licensed, he has over twenty years experience doing home repair work. He testified that he does roofing, drywall, flooring, window installation, and carpentry. Assisting Ottis is his wife, Demitri, who performs administrative duties related to Ottis' home repair business. Particularly, she performs bookkeeping functions such as maintaining receipts related to costs for each of Ottis' jobs and drafts contracts between Ottis and his clients.

Sometime in 2005, the Debtors entered into a contract with Ms. Williams which provided that Ottis would perform some home repair work on a house Ms. Williams owned located at 4843 West Huron Street, Chicago, Illinois (the "property").[2] Ms. Williams is a retired certified nursing assistant and cosmetologist. The parties memorialized their agreement in a contract drafted by Demitri dated May 3, 2005. The contract included work for various home repair tasks such as painting, replacing doors and windows, adding closet space, making rooms larger, fixing ceilings, adding new light fixtures and other projects. Payment of the work was contained in the following clause:

> This [w]ork [i]ncludes [p]ages as follows; [sic] [a]ll material and [l]abor in the amount of $23,500.00 [sic] material must not exceed $6,500.00; [p]ayment to be made as follows; [sic] [h]alf 1/2 down which is $11,750.00 [sic] when [h]alf of the work is completed [sic] another half, which is $5,875.00; and the [b]alance of $5,875.00 when all work is completed.
>
> This contract is binding between Ottis L. Dugar + Georgia Williams; [sic][.]

(Emphasis added).

---

[2]This property is not Ms. Williams' primary residence. She purchased this property from her brother to keep it in the family.

2

However, Demitri and Ms. Williams have different accounts regarding the above quoted clause. At issue is whether the phrase contained in the above quoted language stating "material must not exceed $6,500.00" was altered. Ms. Williams claims that Demitri crossed out this language while they drafted the agreement; conversely, Demitri testified that this language was part of the contract but Ms. Williams crossed it out before returning the original to her. No photocopies exist showing the contract without the language crossed out. The parties executed the agreement on July 6, 2005.

During the performance of the contract, progress of the project went awry. Ottis began work on July 11, 2005, testifying he worked five to six days a week. While working on the property, Ottis claims his work was constantly interrupted by Ms. Williams. He testified that Ms. Williams questioned the smallest details of his work, expressed constant dissatisfication with Ottis' work, refused to let him enter the property on certain days to do work, and cursed and insulted Ottis. Ottis also testified about potential criminal activity on the property while he worked. He testified that he did not feel he was working in a safe environment at times because of several young men that hung out at the property possibly selling drugs and gambling.

The contractual relationship reached its boiling point in August 2005 when Ms. Williams asked Ottis to perform work not specified in the contract. The additional work entailed building a back porch on the property for an additional $800.00. After doing the porch work, Ms. Williams noticed a crack in the front door that Ottis installed. Ottis and Demitri removed the door to exchange it for another one from the home improvement store at which they purchased it. On the way to exchange the door, Demitri stopped at her bank to cash the $800.00 check only to discover that Ms. Williams had stopped payment on it. Demitri subsequently contacted Ms. Williams to inquire about

the check. Ms. Williams responded by stating that she was not going to pay Ottis any more money regardless of whether he finished the work. At that point, the Debtors returned the door to the home improvement store for a refund. Ms. Williams then called the police and complained that the Debtors had stolen her door. When the Debtors arrived at the property, they agreed to purchase another door and return it to Ms. Williams. However, after purchasing the door and returning to the property, the Debtors discovered that another door had been installed. The Debtors did not return to the property after that. They were paid only the initial $11,750.00 down payment provided under the contract.

Also testifying on behalf of the Debtors was Keith Kersee, owner of Double K Construction, the name of Kersee's home repair business. Kersee testified that he was the one that installed the front door in place of the door the Debtors removed. After installing the door, Kersee entered into a contract to perform additional work and the work that was supposed to be completed by Ottis in exchange for $18,000.

Kersee echoed much of the testimony given by Demitri and Otis. He testified that Ms. Williams was difficult to work with due to her constant complaining and insults. Additionally, he also felt the working environment was unsafe due to potential criminal activity similar to what the Debtors described. Like Ottis, Kersee did not have the opportunity to complete the work contracted for. One day Kersee arrived at the property to discover a stop work order had been issued by the City of Chicago that nullified the permit he obtained from the city to work on the property. Present at the property was a building inspector for the City of Chicago. Ms. Williams told the inspector that she did not want Kersee doing any more work on the property. She told Kersee never to come back and he obliged. Kersee was unable to finish the work under the contract and was only paid $9,000.00

for his work. The only work that Kersee did was demolition, ceiling, and electrical work on the property. Kersee testified that one of Ms. Williams' male relatives cracked a glass bottle on his head in retaliation for his unsatisfactory efforts on Ms. Williams' behalf.

Ms. Williams testified as the only witness on her behalf. She disputed much of the Debtors' testimony. Regarding the crossed out provision in the contract, she claims that Demitri struck the $6,500.00 material limit clause while they were drafting the agreement. She also disputed that Ottis was present to work on the property as often as he claimed, stating that he was not there regularly, and that by August, nothing had been done and what was done did not comply with the contract. Examples of this were windows that were too small or steps that were not properly installed. Before terminating her contract, she attempted to compromise with the Debtors because she did not want to lose her $11,750.00 deposit. However, her efforts to compromise with the Debtors failed, ending her contractual relationship with the Debtors.

After her contract with the Debtors ended, Ms. Williams testified about subsequent contractors she hired. First was Kersee, who also did not finish the repair work. She then testified that she hired additional people to work on her house: J&B Electric, Integrity Plumbing and Cesar Garcia. She presented evidence that she paid J&B Electric $2,600.00, Integrity Plumbing $5,000.00, and Cesar Garcia $23,000.00.[3] After this additional work, Ms. Williams claims the house is now habitable.

---

[3] Ms. Williams testified that she paid Integrity Plumbing $10,000.00. However she was only able to produce proof of $5,000.00 from a copy of a cashier's check in the amount of $2,000.00 and a copy of the contract between her and Integrity Plumbing indicating she paid $3,000.00 on May 22, 2006.

5

## III. DISCUSSION

A properly filed proof of claim is *"prima facie* evidence of the validity and amount of the claim." *In re Salem*, 465 F.3d 767, 779 (7th Cir. 2006) (quoting Rule 3001(f); *see also* 11 U.S.C. § 502(a). The party objecting to a valid proof of claim carries the burden of rebutting the proof of claim. *See In re Grabill Corp.*, 121 B.R. 983, 992 (Bankr. N.D. Ill. 1990).

In this case, the Debtors are charged with rebutting the validity of Ms. Willaims' claim. Rebutting that claim involves showing either that the Debtors did not breach their contract with Ms. Williams or that Ms. Williams breached her contract with the Debtors. The Debtors choose the latter route.

State law governs contractual disputes in federal court. *North Shore Gas Co. v. Salomon Inc.*, (7th Cir. 1998). Under Illinois law, a breach of contract is shown by the following elements: (1) that a valid and enforceable contract exists; (2) performance by the plaintiff; (3) defendant's breach of the contract; and (4) a resulting injury to the plaintiff from the breach. *Burrell v. City of Mattoon*, 378 F.3d 642, 651; *see also Catania v. Local 4250/5050 of Communications Workers of America*, 834 N.E.2d 966, 971, 359 Ill.App.3d 718, 724 (Ill. App. Ct. 2005) (same).

In this case, the parties do not dispute the first element that a valid and enforceable contract was in place. However, the second and third elements are in dispute. Ms. Williams claims the Debtors breached their contract by failing to complete the work that was contracted for. From hearing the testimony in this case, the Court finds that it was Ms. Williams who breached the contract. The Debtors testified how Ms. Williams made it difficult for Ottis to complete the work. She constantly complained, changed her mind, and insulted Ottis and refused them access to the premises and future payments due under the agreement. Further, the subsequent contractor, Kersee,

substantiated much of this behavior during his testimony. His testimony supported the testimony of the Debtors. This bolsters the credibility of the Debtors that Ms. Williams told the Debtors that they were not going to be paid for the work done, unequivocally terminating the contract. Ms. Williams found someone to fix the door and refused to talk to the Debtors. Conversely, Ms. Williams did not bring any witnesses to support her position and rebut the Debtors case. She did not elicit the testimony of any of the other contractors. In fact, the only other contractor besides the Debtors that testified was Kersee, who testified on behalf of the Debtors. If the Debtors had performed poorly under the agreement, Kersee could have so testified; this bolsters the Court's finding that the Debtors did not breach the contract. Therefore, since the Debtors successfully rebutted the validity of Ms. Williams' claim, the claim is denied.

## IV. CONCLUSION

For the reasons set forth above, the Debtors objection to the claim of Georgia Williams is sustained. Georgia Williams' claim herein is disallowed; the estate owes her nothing.

**DATED: August 19, 2008**                               **ENTER:**

                                                          Jacqueline P. Cox
                                                          **United States Bankruptcy Judge**